IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Patrick Keller,<br><br>        Plaintiff,<br><br>    v.<br><br>Client Services, Inc.,<br><br>        Defendant. | Case No. 3:21-cv-50218<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patrick Keller brings this suit as a class action and an individual claim under the Fair Debt Collection Practices Act (FDCPA). 15 U.S.C. § 1692 *et seq*. After Keller filed the claim in the Circuit Court of the Twenty-Second Judicial Circuit Court of McHenry County, Illinois, Defendant Client Services, Inc. ("Client Services") removed to this Court under 28 U.S.C. § 1441. Keller now moves to remand the case back to state court and for fees. For the reasons explained below, the motion is [18] granted.

**I.    Background**

Keller alleges that Client Services sent him a debt collection letter on January 24, 2020, which sought collection of a $379.71 debt he allegedly owed on his CareCredit credit card. On February 14, 2020, Keller's attorney sent Client Services a letter requesting verification of the debt and notifying it that Keller was represented by counsel. In late 2020 and into 2021, Client Services allegedly began sending Keller new collection letters. This time, they used a new reference number,

1

even though the "amount and description of the debt ma[de] it clear that it concerns the same $379.71 debt as the January 24, 2020 letter." Dkt. 1-1, ¶ 22. Keller alleges that this tactic confused him: He wasn't sure if it was the same debt or why Client Services was contacting him instead of his attorney, as the FDCPA requires. *Id.* ¶ 7 ("Plaintiff was misled and confused by the conduct complained of herein."); *Id.* ¶ 21 ("Plaintiff was confused as to whether the debt was the same and why he was being contacted directly about it."). He further alleges that he was "harassed and aggravated as a result." *Id.* ¶ 23. On behalf of the putative class, Keller alleges that this tactic is a pattern for Client Services. *Id.* ¶ 24 ("Defendant has engaged in a pattern of ignoring notices that consumers are represented and/or verification requests . . . "). In support, Keller points to numerous other lawsuits.

Based on these allegations, Keller brings a class action for Client Services' alleged pattern of FDCPA violations (Count I). He also brings an individual claim for Client Services' alleged misleading communication and for failing to direct its communication to his attorney (Count II). Though not expressly listed as a claim, Keller also alleges that Client Services shared his private information with a third-party without his consent, though he never alleges any harm in connection with the allegedly unlawful sharing of information. Dkt. 1-1, ¶¶ 34–40.

II.     Analysis

Keller moves the Court to remand the case back to state court. The removal statute provides, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §

1447(c). The statute further allows for the shifting of fees if the plaintiff is successful in moving for remand: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* Here, Keller contends that he sued in state court because he believed he lacked standing to bring this action in federal court. Dkt. 18, ¶ 7.

### A. Standing

Article III standing is an essential element to federal subject-matter jurisdiction. *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). On removal, the defendant bears the burden of establishing federal jurisdiction. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, SP Plus had to establish that all elements of jurisdiction—including Article III standing—existed at the time of removal."). Furthermore, doubts regarding the propriety of removal should be "resolved in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013). At the pleading stage, the plaintiff need not prove it has standing, but it must allege facts sufficient to plausibly allege standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Collier v. SP Plus Corp.*, 889 F.3d 894, 896–97 (7th Cir. 2018) (analyzing Article III standing on removal by reference only to the plaintiff's state court allegations).

The Seventh Circuit has recently addressed standing in FDCPA cases on several occasions. Those opinions require remand of this case. The elements of

Article III standing are familiar: the plaintiff must have suffered an injury in fact that is redressable by the relief sought and traceable to the harm complained of. *Lujan*, 504 U.S. at 560–61. Because the analysis is driven by the harm complained of, it is the "[f]irst and foremost" element. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The Supreme Court has defined an injury in fact as an invasion of a legally protected interest that is both concrete and particularized, as well as actual or imminent—rather than merely hypothetical or conjectural. *Spokeo, Inc. v. Robins*, 136 S. Ct. 150, 1548 (2016).

Concrete harm can be either tangible or intangible. *Id.* at 1549. In determining whether an intangible harm is sufficiently concrete, federal courts consider "both history and the judgment of Congress." *Id.*; *Larkin*, 982 F.3d at 1064. Though federal courts consider the judgment of Congress, a statutory law still must abide the constitutional strictures of Article III, and a bare violation of a statute is not enough to constitute a case or controversy of a judicial nature, so that the case may be heard in federal court. *Spokeo*, at 1550 ("On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation."). And though the Supreme Court has used the phrase "bare *procedural* violation," the Seventh Circuit has repeatedly rejected arguments that bare *substantive* violations confer standing. *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) (explaining that Article III does not differentiate between substantive and procedural violations); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d

1069, 1072 (7th Cir. 2020) (same); *Larkin v. Fin. Sys. of Green Bay*, 982 F.3d 1060, 1066 (7th Cir. 2020) (same).

In *Gunn*, the plaintiffs alleged that a demand letter was misleading, in violation of the FDCPA. 982 F.3d at 1070. The plaintiffs argued that they were annoyed by the purportedly misleading letter. Because the mere annoyance was the only injury alleged, the plaintiffs lacked standing to sue. "Indeed, it is hard to imagine that anyone would file any lawsuit without being annoyed (or worse). . . . If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished." *Id.* at 1072. In *Casillas v. Madison Avenue Associates*, the plaintiff alleged that Madison Avenue had violated the FDCPA by failing to inform her that she was required to exercise her rights in writing. 926 F.3d 329, 332 (7th Cir. 2019). But she never alleged that the violation caused her any harm. For example, she never alleged that she would have asserted her rights had she known to do so in writing. *Id.* at 334 ("She complained only that her notice was missing some information that she did not suggest that she would ever have used."). So, "no harm, no foul." *Id.* at 331.

Furthermore, in *Nettles v. Midland Funding LLC*, the Seventh Circuit dismissed an FDCPA case for lack of standing in which the plaintiff pleaded only that she received a collection letter that overstated the amount due. She had pleaded no harm, so she had no standing to sue. 983 F.3d 896, 900 (7th Cir. 2020). In *Smith v. GC Services L.P.*, the plaintiff complained that a debt-collection letter

5

required that she dispute the debt in writing even though statute did not expressly require the dispute be in writing. 986 F.3d 708, 709 (7th Cir. 2021). Smith alleged that she was confused by the letter but not that the "lack of clarity led her to take any detrimental step." *Id.* at 710. In holding that she lacked standing, the Seventh Circuit explained, "She is no worse off than if the letter had told her that she could dispute the debt orally." *Id.* at 711.

These cases, and others, represented a flurry of decisions by the Seventh Circuit that attempted to clarify what it means to suffer concrete harm under the FDCPA. The Seventh Circuit's decision in *Markakos v. Medicredit, Inc.* is a good example. 997 F.3d 778 (7th Cir. 2021). In *Markakos*, the majority again held that an FDCPA plaintiff lacked Article III standing. The defendant sent her a collection letter that listed the wrong amount and that the inaccuracy "confused and aggravated" her. *Id.* at 781. But the court explained that those kinds of injuries are not sufficiently concrete. *Id.* That court was divided on the reasoning, however, with the concurrence relying primarily on *stare decisis*. *Id.* at 785 (Rovner, J., concurring). But both concurring opinions stressed that the Seventh Circuit has become more stringent on questions of standing than other circuits. *Id.* (Ripple, J., concurring); *Id.* at 785–86 (Rovner, J., concurring) ("Respect for *stare decisis* necessitates deference to the path this circuit has chosen, but it should not be read—in this or other cases—as signaling agreement by all panel member with our circuit's approach. I agree with Judge Ripple in his concurrence that the approaches taken in some other circuits are consistent with Article III cases-or-controversy

6

jurisprudence, while being more properly deferential to the Congressional judgment inherent in the determination of harms and remedies in the FDCPA, and that those approaches constitute the optimal path.").

And the Seventh Circuit's recent decision in *Wadsworth v. Kross, Liberman & Strone, Inc.* further clarifies that injuries without harm, such as anxiety, annoyance, confusion, embarrassment, aggravation, humiliation, mental anguish, and emotional distress are not enough to satisfy Article III in the Seventh Circuit. 12 F.4th 665 (7th Cir. 2021). In *Wadsworth*, the defendant failed to provide Wadsworth with a complete written notice of her statutory rights within five days of the initial communication and never identified itself as a debt collector or explained that it was attempting debt collection. *Id.* at 666–67. Though that case was on summary judgment, the Seventh Circuit noted that the "complaint merely alleges that she 'has suffered, and continues to suffer, personal humiliation, mental anguish and emotional distress.'" *Id.* at 668. She later explained that "she got less sleep and felt intimidated, worried, and embarrassed." *Id.* Based on those allegations and testimony, the court explained, "As our bevy or recent decisions on FDCPA standing makes clear, anxiety and embarrassment are not injuries in fact." *Id.* "These are quintessential abstract harms that are beyond our power to remedy." *Id.*

As stated above, Keller reasonably believed his allegations fell short of Seventh Circuit case law, and that he lacked standing to bring his claim in federal court, so he filed in state court. Undeterred, Client Services removed to this Court,

7

which prompted Keller to file the instant motion to remand. Although Client Services inexplicably alleged a lack of concrete harm as an affirmative defense, dkt. 10, ¶ 60, it contends that Keller's allegations are enough to establish standing at the pleading stage, dkt. 22, at 3.

Client Services' argument in favor of Keller's standing rests primarily on the Eleventh Circuit's opinion in *Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341 (11th Cir. 2021). But *Hunstein* offers no quarter for four reasons.

First, the Court has already noted that the Seventh Circuit's analysis of Article III standing has differed from that of other circuits. This Court is bound by Seventh Circuit precedent, not Eleventh Circuit precedent. *See Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 515 (N.D. Ill. 2018).

Second, even if this Court viewed an Eleventh Circuit decision as persuasive, *Hunstein* was recently vacated and will be heard en banc. *Hunstein v. Preferred Collection & Mgmt. Servs.*, __ F.4th __, No. 19-14434, 2021 U.S. App. LEXIS 34202, at *4 (11th Cir. 2021). In these circumstances, a vacated opinion has no precedential value. *United States v. Carmel*, 548 F.3d 571, 579 (7th Cir. 2008). This is especially true when the vacated decision is from a different circuit. *United States v. Norris*, 56 F. Supp. 2d 1043, 1044 (N.D. Ind. 1998).

Third, Client Services concedes that Keller lacks standing to bring his primary claims in federal court. Keller specifically alleges two claims and alludes to a third without identifying it as a claim: (1) sending a communication to him instead of his attorney, (2) sending a misleading communication, and (3) improper

8

information sharing with a third-party letter vendor. Client Services acknowledges in response to the motion that Keller's allegations are insufficient to confer standing for his claims for sending a communication to him instead of his attorney and for sending a misleading communication. Dkt. 22, at 6.

But plaintiff must have "standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *see also DaimlerChrystler Corp. v. Cuno*, 547 U.S. 332, 351–52 (2006). Indeed, So, Client Services, as the removing party, bears the burden of establishing Keller's Article III standing for each claim he brings, and it has admitted that it lacks standing on two of Keller's individual claims.

Fourth, although existing Seventh Circuit precedent is not directly on point, it instructs against finding that Keller has standing. Client Services is correct that none of the cited Seventh Circuit cases directly answer the question of whether Keller's improper sharing of information to a third-party allegation is enough to confer standing as to that claim. The question was presented in *Pennell v. Global Trust Mgmt. LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). There, however, the Seventh Circuit was not required to answer the question because the plaintiff never made the allegation in the complaint, but merely alluded to it in a brief. *Id.*; *see also Dahl v. Kohn*, 853 F. App'x 1, 2 (7th Cir. 2021) (following *Pennell*). Thus, *Pennell* does not dispose of the question presented here.

9

Without specifically incorporating the allegation into a claim, Keller alleged that the sharing of his information to a third party violated the FDCPA. But that allegation did not identify any harm that resulted. Keller does not even allege any embarrassment or other indignancy relating to this disclosure to the third party. He merely alleges that he was aggravated and confused by the situation. Dkt. 1-1. ¶¶ 7, 21, 23. But this resulting harm is not enough. *Markakos*, 997 F.3d at 781. And even if the Court were to speculate that the alleged disclosure to the third party resulted in embarrassment or indignancy (which it can't), *Wadsworth* made clear that those harms are not enough to satisfy Article III. 12 F.4th at 668. The court spoke in broad terms and declared that "anxiety and embarrassment are not injuries in fact." *Id*. The Court takes the Seventh Circuit at its word. *See Laudicina*, 328 F.R.D. at 514 ("But this Court believes that the judges on the Seventh Circuit are careful writers: They say what they mean and mean what they say. The broad language hedges no bets."). The same goes for confusion, annoyance, intimidation, disgust, and a sense of indignation. *Id*. If these resulting harms are not enough to establish standing, then the mere allegation of an FDCPA violation by disclosing private information to a third party without any alleged harm cannot be enough either. To the extent that the Seventh Circuit's instruction may be construed as ambiguous, that court has also instructed that any "doubts regarding removal are resolved in favor of plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013). Thus, existing Seventh Circuit case law instructs that Keller does

10

not have Article III standing to bring a statutory FDCPA claim for sharing private information with a third-party claim based on the allegations in his complaint.

Lastly, Client Services' citation to *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) does not save it. Assuming that Keller has stated a statutory violation for Client Services' alleged sharing of his information with the letter vendor, he has not alleged a resulting concrete injury based on the analysis reaffirmed in *TransUnion*. There, the Supreme Court reiterated its instruction from *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) that, in analyzing concreteness, federal courts consider the judgment of Congress and whether the alleged harm bears a close relationship to a harm traditionally recognized in American courts. *TransUnion*, 141 S. Ct. at 2204. Though Client Services bears the burden of establishing jurisdiction—as the removing party—it failed to argue how any harm alleged here is analogous to a harm traditionally recognized by American courts. *See* Restatement (Second) of Torts § 652D, cmt. a. Illustration 1. ("A, a creditor, writes a letter to the employer of B, his debtor, informing him that B owes the debt and will not pay. This is not an invasion of B's privacy under this Section.").

\*   \*   \*

As the party removing this case, Client Services had the burden of establishing Article III standing. Keller reasonably and rightfully asserted that he lacked standing, a position supported by Seventh Circuit and Supreme Court precedent. Client Services has not met its burden of showing that standing exists.

11

**B. Fees**

Section 1447(c) provides a fee-shifting mechanism when plaintiffs successfully move to remand a civil action back to state court. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, the Supreme Court explained that the determination of whether fees are appropriate under § 1447(c) should turn on the reasonableness of the removal. 546 U.S. 132, 141 (2005).

Here, Client Services removed the action to federal court and then broadly asserted an affirmative defense that Keller did not suffer a concrete injury in fact. Dkt. 10, ¶ 60. Client Services removed to federal court and bestowed on itself the burden of establishing this Court's jurisdiction and did so while admitting that it believed this Court lacked jurisdiction. Three glaring problems exist with this tactic.

First, a lack of standing is not an affirmative defense in federal court. To argue otherwise is patently frivolous. *Larkin v. Fin. Sys. of Green Bay*, 982 F.3d 1060, 1066 n.1 (7th Cir. 2020) In *Larkin*, the plaintiff argued in reply for waiver of the standing challenge. The Seventh Circuit responded, "That argument is frivolous. Article III standing is jurisdictional and cannot be waived." *Id.* If the Court is presented with a challenge to its subject-matter jurisdiction, it must be addressed, not saved for later.

Second, Client Services apparently knew that two of Keller's three individual claims lacked standing. It admits as much in response while chastising Keller as needing to "be reminded that he has raised not one, nor two, but three separate allegations and claims under the FDCPA." Dkt. 22, at 6. Client Services should be reminded that binding Supreme Court case law requires standing be established for each of those three claims. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *see also DaimlerChrystler Corp. v. Cuno*, 547 U.S. 332, 351–52 (2006). Given that Client Services knew Keller lacked standing on two of three individual claims, removal to this Court was not objectively reasonable.

Third, the practice of removing an action to federal court and then arguing against standing later is not reasonable. Indeed, this practice violates the fundamental tenant of Rule 1. Fed. R. Civ. P. 1. Client Services tried to have it both ways. It tried to overcome Keller's choice of forum by removing to this Court, only to challenge the jurisdiction it had the burden of establishing and save for another day the argument that it fought against here. That is not reasonable; it serves no purpose but to delay litigation, unnecessarily increase the cost of litigation, and consume judicial resources that could be spent on the resolution of other matters before the Court.

For those reasons, the Court exercises its discretion to order that the cost of removal be shifted under 28 U.S.C. § 1447(c) to Client Services.

13

### III. Conclusion

For the reasons explained above, Keller's motion to remand and for fees [18] is granted. Pursuant to Local Rule 54.3, the parties are ordered to meet and confer in good faith regarding the amount of fees recoverable under 28 U.S.C. § 1447(c). The parties are further ordered to file a joint status report by December 23, 2021, regarding the status of their LR 54.3 conference and whether any fee dispute remains. If no dispute exists, the Court will then remand the case forthwith to the Circuit Court for the Twenty-Second Judicial Circuit, McHenry County, Illinois.

Date: November 30, 2021

_____
Honorable Iain D. Johnston
United States District Judge